**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 18-CR-00359-REB
UNITED STATES OF AMERICA,
        Plaintiff,
v.
LAWRENCE MARTIN BIRK,
        Defendant.

## UNITED STATES' TRIAL MEMORANDUM

The United States of America, by and through undersigned counsel, submits the following trial memorandum.

### I. STATEMENT OF THE CASE

#### a. Summary of the Evidence

Evidence at trial will prove the following: Lawrence Birk filed annual tax returns and made corresponding tax payments on a relatively timely basis through 1997. Then he stopped. After failing to file returns for years, he was audited by the IRS. He did not cooperate with the audit, leaving the IRS to prepare "substitutes for return" on his behalf, assessing tax for 1998-2003. After failing to make payment, the IRS sent Birk a notice that it would seize his assets by levying his bank account. At this point, Birk engaged a professional tax firm, paying them $10,000 to prepare his delinquent 1998-2005 returns, which he filed between November 2006 and January 2007. According to Birk's returns, he owed the IRS over $90,000, but he never paid a dollar. After receiving IRS notices of intent to levy, Birk stopped using his personal bank account, instead using his business account, even for personal affairs. He also kept that account balance low by purchasing official checks, often immediately after receiving sizable deposits.

### b. The Charge

The indictment charges Birk with a single count, attempt to evade or defeat tax, in violation of 26 U.S.C. § 7201, commonly referred to as "tax evasion." Birk is charged with willfully attempting to evade IRS collection efforts by conducting his financial affairs (even his personal financial affairs) out of his business bank account, and by purchasing official checks to keep his account balance low.

The stipulated tax evasion jury instruction offers a four-element articulation of the offense. To sustain a conviction on the sole count, the government must prove: i) Birk owed substantial tax for 1998-2005; ii) Birk intended to evade and defeat payment of that tax; iii) in furtherance of that intent, Birk either used his business bank account to conduct his personal financial affairs or maintained a low balance in that account by purchasing official checks; and iv) Birk acted willfully, that is, with the voluntary intent to violate a known legal duty.[1]

### i. Birk owed substantial tax for 1998-2005.

Birk's tax liability cannot be disputed. The IRS assessed him tax for 1998-2003 based on a review of the income third parties reported paying him and a detailed analysis of his bank records. In response, Birk hired a tax and accounting firm to prepare his outstanding returns. Even according to his own returns, he owed substantial tax. Finally, IRS Revenue Agent Mary Trabold, who will testify as a summary-expert witness, conducted a recent and independent evaluation of Birk's tax due and owing, also concluding that Birk owed substantial tax.

---

[1] The analysis that follows flips the order of the second and third elements.

> ii. *Birk used his business account business bank account to conduct his personal financial affairs and/or maintained a low balance in that account by purchasing official checks.*

These facts are revealed by Birk's bank records. Birk maintained personal and business bank accounts at Park State Bank & Trust. Although the government will not introduce the entirety of the bank records, it will offer a summary that shows the average monthly balances of his accounts. The summary shows that Birk all but completely stopped using his personal bank account by 2007. While the average balance of that account remained flat, his business account remained in active use. Further, Revenue Agent Trabold will testify that her analysis of Birk's business account shows that he used that account for non-business purposes, something that was necessitated by Birk's decision to stop using the personal account.

The government will also admit portions of the bank records to show that Birk purchased official checks, often immediately after making a deposit, to keep his balance low. Between 2006 and 2018, Birk purchased over $1.6 million in official checks, removing that money from his account and putting it out of reach of the IRS.

> iii. *Birk intended to evade and defeat payment of his 1998-2005 tax.*

This is one of the rare cases where the government will offer direct evidence of the defendant's intent. When Special Agents spoke to Birk in 2014, he told them that he does not like to keep a lot of money in his account because the IRS or Colorado State Department of Revenue would "sweep" it out. That is, Birk admitted that his actions were motivated by an intent to avoid the payment of tax. In addition, Birk's switch to using his business account came only after the IRS notified him of their intent to levy.

*iv. Birk acted willfully.*

Willfulness requires the government to prove that Birk knew he had a duty to pay tax and voluntarily intended to violate that duty. The voluntariness of Birk's actions are not in meaningful dispute. It is anticipated, however, that Birk's knowledge of the law will be contested at trial. The government will prove Birk's knowledge circumstantially. The inference that Birk knew of his duty to pay can be drawn from, *inter alia*, his extensive contact with the IRS, concerted efforts to avoid tax withholding, filing of fraudulent returns, ultimate decision to hire a tax firm to prepare his delinquent returns (misleading his professional return preparer), prior lifetime of tax compliance, and his statements.

II. **EVIDENTIARY ISSUES**

The parties have worked diligently to resolve evidentiary issues prior to trial and the government does not anticipate any major disputes. This memorandum proceeds with briefly addressing the caveats to the government's evidentiary stipulations and potential issues that come up when defendants take the stand in tax defier trials.

   a. **Hearsay**

Even a defendant cannot use his out-of-court statement to prove the truth of the matter asserted. He can, of course, use those statements for the non-hearsay purpose of proving his state of mind. The parties are aware of these rules, and the government's only concern regards the finer distinctions of these hearsay rules.

Pointing to defense Exhibit A, a letter Birk sent to the IRS, as an example, it is clear that defendant cannot use his statement "any correspondence sent to the IRS by either myself, my wife, or my Power of Attorney, always offered to . . . pay any tax that was lawfully owed" as proof that Birk, in fact, always sent such letters offering to pay.

Further, the defense cannot offer the letter's statement "I am a firm believer in the *rule of law*" to prove that belief because Fed. R. Evid. 803(3) explicitly does not apply to "statement[s] of memory or belief to prove the fact remembered or believed." Finally, the Exhibit A hearsay statement that "I have looked for [a statute or regulation that requires the filing of tax returns] for the past six years. . . . I even asked my law professor in graduate school to help me and was told . . . " cannot be introduced to prove Birk's "state of mind" because that state of mind proof would depend entirely on the "facts" asserted in that hearsay statement.

In short, while the government stipulates to the admissibility of these exhibits, its agreement depends on non-hearsay use by the defense. The defense cannot use these and other hearsay statements to support a closing argument that Birk acted in good faith by, for example, doing his own legal research or consulting legal professionals. To put on that defense, Birk has to take the stand. The "state of mind" exception to Fed. R. Evid. 802's general prohibition against hearsay is unavailing.

### b. Potential Issues If Birk Testifies

Due in part to the issues discussed above, tax defiers regularly testify in their defense. It is also not uncommon that they desire to offer testimony that is irrelevant or only slightly probative of a material issue, subjecting such testimony to exclusion under Fed. R. Evid. 402 and 403. With only rare exception, the constitutional right to testify yields to the rules of evidence. "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by

certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

### i. Even a testifying defendant may not offer irrelevant evidence.

"[A] criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense." *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005). "To determine what evidence is relevant, we first turn to the elements of the offense." *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004). After listing the elements, the *Markey* court identified only one that was in dispute—defendant's knowledge—before concluding that the trial court properly excluded defendant's evidence because it was not probative of knowledge. *Id.* at 1136. Should Birk choose to testify, he too should be constrained to offering testimony that bears on an element that is in dispute. Although he can, of course, dispute any of the elements, it is anticipated he will dispute only the knowledge portion of the "willfulness" evidence, claiming he had a good faith belief that the law did not require him to pay tax.

*United States v. Cheek*, 498 U.S. 192, 202 (1991), explicitly permits defendants to raise a "claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." That is because the willfulness requirement is designed to "separate the purposeful tax violated from the well-meaning, but easily confused, mass of taxpayers." *United States v. Bishop*, 412 U.S. 346, 361 (1973). It is also noteworthy that while "good faith" is a defense, the government does not need to prove bad faith. *See, e.g.*, *Cheek*, 492 U.S. at 200-01. As such, evidence of defendant's intentions or motive, unless it bears on his (lack of) knowledge of the legal duty to pay tax, is not probative of

willfulness. *Id.* at 203 (holding that trial court did not err in ruling evidence of defendant's state of mind regarding the tax law was irrelevant and inadmissible when it did not bear on the question of whether he made an innocent mistake). "The proper inquiry is whether he actually misunderstood his tax obligations."

Other potentially irrelevant evidence sometimes offered by tax defiers is that which invites the jury to decide the case on an improper basis—stipulated instruction no. 4 informs the jury that they cannot base their verdict on prejudice or sympathy. This type of evidence is much easier to identify and does not require additional briefing.

### ii. Even relevant evidence is subject to Rule 403.

A defendant's constitutional right to put on a defense does not overcome the Court's prerogative to exercise its discretion to exclude relevant evidence under Rule 403. *See, e.g., Solomon*, 399 F.3d at 1240 (excluding photos of defendant's injuries). The standard for relevance is so low that government objections to potential defense testimony will often be under Rule 403, and the government will ask for an alternative Rule 403 ruling should the Court exclude evidence under Rule 402. The Federal Reporter is replete with examples of defendants attempting to elicit evidence that would make them sympathetic (evidence that often has little-to-no bearing on the elements of the charged offenses), being denied by the trial court under Rule 403, and affirmed by the courts of appeal.

Evidence or testimony that Birk serves as a caregiver to his wife, for example, is properly excluded under Rule 403. Like the well-known prohibition of the reference of potential punishment, all "[i]nformation regarding the consequences of a verdict is [] irrelevant to the jury's task." *Shannon v. United States*, 512 U.S. 573, 579 (1994). In

*United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991), the defendant in a fraud case sought to introduce testimony that he devoted his life to caring for his teenage son with cerebral palsy. The defendant in *Paccione* argued that this was probative of the "fact" that he would never do anything to risk imprisonment. *Id.* In affirming the conviction, the Second Circuit held that "[i]t was well within the court's discretion to draw the line to exclude testimony that had no bearing on his honesty or integrity and that could well cause the jury to be influenced by sympathies having no bearing on the merits of the case." *Id.*

Birk's own health is unknown, but also irrelevant. Although the facts were quite different in *United States v. Martinez*, 923 F.3d 806 (10th Cir. 2019) (sexual enticement of a minor case), the Tenth Circuit affirmed the trial court's decision to exclude evidence of Martinez's mental health history because any probative value (Martinez argued it negated his *mens rea*) was outweighed by the risk the jury may think it "provides an excuse for misconduct or [that] it may otherwise generate sympathy for the defendant." 923 F.3d at 815 (internal quotation omitted).

Birk should also not be allowed to testify that he could not afford to pay, needed the money for something else, or believed it was futile to pay even a dollar in light of the IRS's over $2 million assessment. A defendant's reasons for not paying a tax due and owing, if relevant at all,[2] should not be admitted when transparently designed to elicit sympathy. If relevant at all, the probative value of such evidence is substantially

---

[2] *See United States v Yurek*, 925 F.3d 423, 431 n.2 (10th Cir. 2019) ("The ability to pay one's taxes is not an element of tax evasion.").

outweighed by the risk of unfair prejudice and would confuse the jury's task of determining whether Birk acted in "good faith."

Finally, tax defiers often seek to introduce the literature and other materials to support their purported beliefs. Because the issue is whether the *defendant* actually believed he did not have a legal duty to pay tax, direct testimony about the literature's effect on his understanding of the law is more probative than the literature itself. *See United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987) (affirming exclusion of tax protester literature under Rule 403). In *United States v. Willie*, the Tenth Circuit held that even excerpts of the United States Constitution were properly excluded in a tax defier trial under Rule 403 because "they were confusing, because the danger of the jury's misuse of the evidence for an improper purpose was great, and because the relevant point was provable by other evidence." 941 F.2d 1384, 1395 (10th Cir. 1991).

### c.  Summary Evidence

The United States and Birk have both filed notices to admit summary evidence under Rule 1006. It appears, however, that the defense will only use demonstrative exhibits, under Rule 611(a), which will not be submitted in evidence. The United States' proposed exhibits, on the other hand, are Rule 1006 summaries, which will be submitted to the jury. The government may also use Rule 611(a) pedagogical aids during closing, but these have not been created yet and there is no notice requirement. Rule 1006 summaries are admitted as substantive evidence themselves; Rule 611(a) pedagogical aids are not. The government raises this distinction only to clarify that its ascent to the stipulated jury instruction at ECF 73 applies only to Rule 611(a) demonstrative exhibits, not the government's properly noticed Rule 1006 summaries.

Respectfully submitted this 15th day of July, 2019.

        RICHARD E. ZUCKERMAN
        Principal Deputy Assistant Attorney General
        U.S. Department of Justice, Tax Division

        By:  /s/ *Christopher Magnani*

        ELIZABETH C. HADDEN
        Assistant Chief
        CHRISTOPHER MAGNANI
        Trial Attorney
        U.S. Department of Justice, Tax Division
        150 M Street, NE
        Washington, DC 20002
        Tel: (202) 514-5189
        Fax: (202) 514-9623
        elizabeth.c.hadden@usdoj.gov
        christopher.magnani@usdoj.gov


        Attorneys for the United States

## CERTIFICATE OF SERVICE

        I hereby certify that on July 15, 2019 I electronically filed the foregoing with the clerk of court by using the CM/ECF system which will send a notice of electronic filing to the attorneys of record.

        */s/ Christopher Magnani*
Christopher Magnani
Trial Attorney
U.S. Department of Justice, Tax Division
150 M Street NE
Washington, DC 20002
Tel: (202) 307-6408
Fax: (202) 514-9623
Email: christopher.magnani@usdoj.gov