1             IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO

2

3   Criminal Action No. 18-cr-00359-REB

4   UNITED STATES OF AMERICA,

      Plaintiff,

5

6   vs.

7   LAWRENCE MARTIN BIRK,

      Defendant.

8

_____

9

                **REPORTER'S TRANSCRIPT**

10             TRIAL PREPARATION CONFERENCE

_____

11

12         Proceedings before the HONORABLE ROBERT E. BLACKBURN,

13   SENIOR JUDGE, United States District Court for the District of

14   Colorado, commencing at 10:40 a.m., on the 11th day of July,

15   2019, in Courtroom A1001, United States Courthouse, Denver,

16   Colorado.

17               **A P P E A R A N C E S**

18         CHRISTOPHER MICHAEL MAGNANI and ELIZABETH CARYL
    HADDEN, Trial Attorneys, U.S. Department of Justice, Tax

19   Division, 601 D Street, N.W., Washington, DC, 20004 , appearing
    for the Government.

20

      EDWARD HARRIS and JENNIFER BECK, Assistant Federal

21   Public Defenders, 633 17th Street, 10th Floor, Denver,
    Colorado, 80202, appearing for the Defendant.

22

23

24            THERESE LINDBLOM, Official Reporter
        901 19th Street, Denver, Colorado 80294

25         Proceedings Reported by Mechanical Stenography
        Transcription Produced via Computer

**P R O C E E D I N G S**

1

2          (In open court at 10:40 a.m.)

3          *THE COURT:*  Good morning.  Thank you.  Please be

4     seated.

5          As said, we open the record in case 18-cr-359,

6     identified as United States of America v. Lawrence Martin Birk,

7     defendant.  The matter is before this court for trial

8     preparation conference.

9          Thus, commencing with the Government and transitioning

10    to the defense, may I have your appearances, please.

11         *MR. MAGNANI:*  Christopher Magnani for the United

12    States.

13         *MS. HADDEN:*  Elizabeth Hadden for the United States.

14         *THE COURT:*  Good morning.

15         *MR. HARRIS:*  Good morning, Your Honor.  Edward Harris

16    for Mr. Birk.

17         *MS. BECK:*  Jennifer Beck appearing with Mr. Birk.

18         *THE DEFENDANT:*  Here I am, Your Honor, Lawrence Birk.

19         *THE COURT:*  Assuming we are prepared to proceed as

20    stated and understood by the Court, direct your attention to my

21    Amended Second Trial Preparation Conference Order, Docket 57,

22    because I intend to use that order insofar as possible as an

23    agenda for our trial preparation conference.

24         Thus, I noted that this case is first said to commence

25    to trial by jury on Monday July 22, 2019, at 8:30 a.m. Mountain

1    Daylight Time with counsel in the courtroom at approximately

2    8 a.m. to finalize any necessary arrangements with Ms.

3    Roberson, my courtroom deputy clerk.  I continue to reserve

4    eight days for trial --

5            As always, I'm the last to know, but I'll live through

6    it.

7            As I was saying, eight days for trial.  That's Monday,

8    July 22 through Friday, July 26 for the first week, resuming on

9    Monday, July 29, and concluding on Wednesday, July 31, 2019.

10   Please plan accordingly.

11           Is the time allocated and reserved sufficient in the

12   opinion of the parties?

13           The Government?

14           *MR. MAGNANI:*  Yes, Your Honor.

15           *THE COURT:*  The defense?

16           *MR. HARRIS:*  Yes, Your Honor.

17           *THE COURT:*  Very well.  Thank you.

18           I have just begun my review of proposed jury

19   instructions and verdict forms.  That effort, of course, will

20   be ongoing.  For your planning and/or edification, I typically

21   conduct my formal charging or jury instruction conferences

22   immediately subsequent to the conclusion of post-evidentiary

23   proceedings, conducted immediately subsequent to the completion

24   of the presentation of evidence in the trial, so please plan

25   accordingly.

1           As I may, I reserve discretion to begin a colloquy

2   concerning condign instructions and verdict forms at any time

3   during and throughout the course of the trial.  Your proposed

4   *voir dire* questions are due by July 15, 2019.  That's on

5   Monday.  What am I expecting?  I'm expecting you to use your

6   good faith and best efforts to identify and thus submit and

7   file those proposed *voir dire* examination questions that then

8   are available to you.  Does that mean during attorney-conducted

9   *voir dire* examination you are prohibited or precluded from

10  inquiring otherwise?  No.  Because, as you know, once this

11  trial begins, like all trials, it will take on a life and

12  personality of its own.  Jury selection is largely peripatetic;

13  it will wander where it will wander.  But I expect you at least

14  for now to give to me those questions that you should have in

15  mind and can reasonably anticipate.

16          The jury selection process -- we're going to proceed

17  with two alternate jurors for an eight-day trial.  Any

18  objection by the Government?

19          *MR. MAGNANI:*  No, Your Honor.

20          *THE COURT:*  Or by the defense?

21          *MR. HARRIS:*  No, Your Honor.

22          *THE COURT:*  Those alternate jurors will be Jurors 1

23  and 8.  1 and 8.  That's a secret to be assiduously guarded by

24  the Court and all of you until the conclusion of the evidence

25  and discussion, then, with the twelve regular jurors.

1        We'll work with a panel of 32, so there will be

2   prospective jurors seated inside the jury box and outside the

3   jury box.  They'll be clearly numbered so you can identify

4   them.  You will be provided with a jury seating chart that we

5   will prepare by computer.  Ms. -- I say "we"; Ms. Roberson

6   will.  That means that the Government will have seven

7   peremptory challenges, the defense, eleven.  By rule of

8   criminal procedure, the final peremptory challenges --

9   challenge may be used only against one of two alternate jurors.

10  Please plan accordingly.

11        Any questions for now about the jury selection

12  process?  Before you say yes or no, I'm going to issue probably

13  today or tomorrow an order that specifically describes in

14  detail what I have just articulated on the record.  Frankly, it

15  will provide you step by step that you can use during the trial

16  to make sure that you don't lose your place as we conduct the

17  jury selection process.  It's probably -- as Mr. Harris can

18  attest, whether he appreciates the protocol or not -- it's

19  easier to do than it is to describe.  And, frankly, I will lead

20  both sides, Government and defense, through the process step by

21  step.

22        But any questions otherwise by the Government?

23        *MR. MAGNANI:*  No, Your Honor.

24        *THE COURT:*  Or the defense?

25        *MR. HARRIS:*  No, Your Honor.

1          *THE COURT:*  Thank you.

2          Probably today, I will issue an order requiring all

3    prospective jurors to complete a one-page juror questionnaire

4    prepared by the Court without input from the parties.  That

5    will be completed by each prospective juror after they report

6    on Monday morning, July 22.

7          Now, who is going to be seated at respective counsel

8    table?

9          Hearing first from the Government, please.

10         *MR. MAGNANI:*  Your Honor, the Government just requests

11   that we can have our paralegal, Sandra Burgess, sit at our

12   table, and Special Agent George Warnock.  He's the case agent

13   in this case.

14         *THE COURT:*  Any objection by the defense?

15         *MR. HARRIS:*  No, Your Honor.

16         *THE COURT:*  Leave is granted as requested.

17         Transitioning to the defense, who will be seated with

18   you at or near counsel table?

19         *MR. HARRIS:*  I would anticipate at counsel table for

20   much of the trial, our paralegal, Jessica Leto.  And near

21   counsel table, and probably at that back table, Jonathan Cohen,

22   our IT and Trial Director guy.

23         *THE COURT:*  Any objection by the Government?

24         *MR. MAGNANI:*  No, Your Honor.

25         *THE COURT:*  Leave is granted as requested.

1          Will you have additional technical assistance,

2    speaking to the Government, beyond your paralegal?

3          *MR. MAGNANI:*  No, Your Honor.  Nothing anticipated, at

4    least.

5          *THE COURT:*  Thank you.  Let me peruse your witness

6    lists.  I'm looking for difficult or tricky pronunciation of

7    names, so that to the best of my ability when I *voir dire* the

8    panel concerning their relationship or acquaintance with

9    prospective witnesses, I can at least pronounce or have a

10   chance to pronounce those witness names correctly.

11         Is it Ben Hopping or hoping?

12         *MR. MAGNANI:*  It's Hopping, Your Honor.

13         *THE COURT:*  Thank you.  Mike Jeka?

14         *MR. MAGNANI:*  It's Jeka.

15         *THE COURT:*  Jeka.

16         Fred Skaluba.

17         *MR. MAGNANI:*  Yes, Your Honor.

18         *THE COURT:*  I'm not requiring the defense to disclose

19   any witnesses as of today; but before we commence trial by

20   jury, to the extent that you can and are able to identify any

21   prospective defense witnesses, I would appreciate that their

22   identities be disclosed to the Court, again so that I may

23   fairly include them in my *voir dire* of the panel.

24         *MR. HARRIS:*  Your Honor, in relation to that, we will,

25   of course, do that.  We don't anticipate any witnesses, with

1    the likely exception of Mr. Birk.  I didn't recall from past

2    experience -- but I guess it's probably best to ask you -- do

3    you want us at the appropriate time to list him or no?

4            THE COURT:  You need not list him.  Thank you.

5            MR. HARRIS:  Thank you.

6            THE COURT:  Now, counsel for the Government was in a

7    standing position.  Did you need to be heard on prospective

8    witnesses?

9            MR. MAGNANI:  No, Your Honor.  Just at the ready for

10   any pronunciation questions.

11           THE COURT:  Of course.

12           Counsel, have you discussed between and among

13   yourselves the allocation of trial time between the parties?

14   Exclude the first day -- jury selection, opening statements,

15   preliminary instructions.  Exclude the final day -- jury

16   instruction conference, instructing the jury, final argument,

17   and submission with some reasonable time hopefully for the jury

18   to at least commence their solemn deliberations.  So we're

19   looking at six days of trial time.

20           MR. MAGNANI:  Yes, Your Honor.  I think six days will

21   be more than sufficient.

22           THE COURT:  Have you discussed its allocation with the

23   defense?

24           MR. MAGNANI:  No, Your Honor.

25           THE COURT:  All right.  I doubt that there is going to

1    be a lack or a paucity of time, so --

2           Mr. Harris, if you begin to feel uneasy at the

3    Government's consumption of time, I'm sure I'll be hearing from

4    you so that we can make whatever adjustments are fair and

5    proper in the circumstances.

6           *MR. HARRIS:*  Yes, Your Honor.  And we will also

7    discuss the allocation.  My only concern -- and it's just going

8    to I think be dependent on facts on the ground -- is that if

9    things start wrapping up early, that we don't send the jury the

10   case too late on a Friday.  But we'll deal with that as we deal

11   with it.

12          *THE COURT:*  Now, once an exhibit is admitted either by

13   stipulation without objection or over objection, please

14   understand, it may be published or broadcast, as the case may

15   be, to the jury without seeking independent leave of the Court.

16   However, you must coordinate any publication or broadcast with

17   Ms. Roberson, please.  I'll be sedulous in being true to

18   Rule 105 and giving timely limiting instructions; and I exhort

19   counsel, of course, to do and be the same.  I discern no

20   discrete or special security precautions, requirements, or

21   issues.

22          Any such matters known to the Government?

23          *MR. MAGNANI:*  No, Your Honor.

24          *THE COURT:*  Or the defense?

25          *MR. HARRIS:*  No, Your Honor.

1          *THE COURT:*  Training on the use of courtroom

2    technology, I think the Government has made the necessary

3    arrangements.

4          Mr. Harris, you and your team are no stranger to our

5    technology; but please coordinate and follow up with

6    Ms. Roberson, who is going to be in Durango as of this coming

7    Monday, in trial.

8          *MR. HARRIS:*  Oh -- with you?

9          *THE COURT:*  With the Court.

10         *MR. HARRIS:*  Oh, and Mr. Williamson, not of our

11   office.

12         *THE COURT:*  That's correct.

13         *MR. HARRIS:*  I'm familiar with that matter.

14         *THE COURT:*  Courtroom etiquette and protocol, never

15   used to have to discussed it, but events in the last couple of

16   years have made it necessary, so let's review the rules.

17         At all times, please stand to address the Court.  I

18   personally will administer the solemn oath required by Rule 603

19   to all witnesses, attempting to impress upon the witness the

20   solemnity of such an oath.  Ordinarily, the witness will stand

21   and I will ask, "May I have your attention in the courtroom?"

22   That's your cue to stop whatever it is you're doing or saying

23   or retrieving and give your full, undivided attention to the

24   administration of that oath.  We can't expect the witness to

25   take it seriously if we don't take it seriously.

1          Now, if you're moving or talking, I'll give you a

2    moment or two to become attentive; failing which, I'll admonish

3    you in the presence of the jury.  So please understand that.

4          Additionally, make sure your witnesses are dressed

5    appropriately in business casual.  We had a criminal case --

6    won't name it -- one of the witnesses comes striding into the

7    courtroom donned in a cutoff sweatshirt.  I got over that.

8    Beneath that was a long-sleeved dingy white sweatshirt.  I got

9    over that.  Below that was short cargo pants.  I swallowed hard

10   and got over that.  Below that were sandals.  I held my nose,

11   and I got over that.  But the *coup de grâce* was the shin-high

12   white socks with those white sandals.  So keep yourself and

13   your witnesses out of harm's way by assuring they are attired

14   appropriately to do business in a federal court.

15          Additionally, regardless of the circumstances and

16   exigencies, no one enters or exits the well of the Court

17   without the approval of the court.  I've had attorneys simply

18   get up during the examination by opposing counsel of other

19   witnesses and leave.  Don't do that.  It won't go well for you.

20   Now, I realize you may have paralegals that may need to come

21   and go for a variety of reasons.  If they need to leave the

22   well of the court or enter the well of the Court, simply draw

23   that to my attention and ask for my approbation, and I will

24   give it.  Otherwise, that activity distracts the jury and the

25   jurors.  Distraction is the stuff of prejudice, which I intend

1    to eliminate insofar as possible.

2            Please allow counsel after completing his or her

3    examination to be seated before you commence your examination.

4    As a young attorney, I grew tired of quitting the podium, and

5    I'm on my way back to my seat, not seated, not organized, and

6    opposing counsel begins his or her examination.  And I said to

7    myself, Self, if you ever become a judge -- and lo and behold

8    over 30 years ago it happened -- I'm simply not going to permit

9    that.  So please plan accordingly.

10           Now, I grew up in the state system, so I'm neither

11   intimidated nor frustrated by attorney-conducted *voir dire*

12   examination.  And I'm going to extend your *voir dire*

13   examination to not 15 but 25 minutes.

14           Two rules that I respectfully request and require that

15   you observe.  Rule No. 1, don't reiterate, repeat, or

16   perseverate a question asked and answered.  Now, that doesn't

17   mean there isn't wide variation on a theme.  But if you find

18   yourself introducing your next *voir dire* examination by saying,

19   "I know the Court or counsel has already asked this question,"

20   check yourself and ask a different question, if only a slightly

21   different question.

22           Now, I believe in trial by jury, not by attorney; and,

23   therefore, *voir dire* examination in jury selection is not your

24   opportunity -- you'll have to wait until opening statements --

25   to become fact specific, evidence specific, or case theory

1    specific in your *voir dire* examination.

2         Unless otherwise ordered, jurors shall not be

3    sequestered before commencement of their solemn deliberations.

4         I will issue an order of sequestration under Rule 615

5    immediately prior to opening statements.  If for some reason

6    after all of this time and these trials I miss my -- I miss my

7    own cue, then please bring that to my attention, because that

8    is my intention.

9         Opening statements shall be limited to 30 minutes per

10   side.

11        Will that be sufficient, hearing first from the

12   Government?

13        *MR. MAGNANI:*  Yes, Your Honor.  That will be

14   sufficient.

15        If I could just alert the Court:  For sequestration,

16   we would ask only that our summary expert witness be exempt

17   from any sequestration order by the Court.

18        *THE COURT:*  Any objection by the defense?

19        *MR. HARRIS:*  No, Your Honor.

20        *THE COURT:*  Very well.  Leave is granted as requested.

21        Will 30 minutes for opening statement be sufficient

22   for purposes of the defense?

23        *MR. HARRIS:*  Yes.  More than.  Yes.

24        *THE COURT:*  You're not required to tell me now; but if

25   you know and can disclose, do you intend to make your opening

1    statement immediately subsequent to the opening statement of

2    the Government or defer until completion of the Government's

3    case in chief?

4         *MR. HARRIS:*  I intend to make it immediately

5    subsequent to the Government's.

6         *THE COURT:*  All right.  Thank you.

7         Objections made in the hearing or presence of the

8    jury, please be as succinct and terse as possible.  We're in

9    luck, the Federal Rules of Evidence are numbered; they have

10   titles and labels.  If you have secondary sources to cite, I

11   invite and exhort those, as well.  If you conclude that your

12   succinct opportunity in the presence of the jury is

13   insufficient, you may request leave of the Court to approach

14   the bench to expatiate, without any guarantee that your request

15   will be granted by the Court.

16        Now, to eliminate or minimize bench or sidebar

17   conferences, please observe the protocol that I have fashioned

18   in the order on page 6 at paragraph 22.  If there is something

19   that we need to discuss at the end of the trial day, give

20   Ms. Roberson sufficient advance notice so that we can dismiss

21   the jury in time to complete that business by 5 p.m., in

22   deference to my staff.  The same is true if we have business

23   that we should discuss before the commencement of trial, on a

24   morning of trial, give us sufficient advance opportunity so I

25   can have the jury come back slightly later that next morning

1    for those same purposes.

2         And when you identify your issue, you've got to give

3    us sufficient information so that I can have some reasonable

4    opportunity to review and research the matter before we proceed

5    on the record outside the presence of the jury.

6         Now, as I've noted, once trial commences, it takes on

7    a life of its own.  There may be exigencies that arise that

8    simply do not accommodate my protocol, requiring the request

9    for a bench conference.  If you're sitting there wondering if

10   your issue is sufficiently exigent to warrant a bench

11   conference, I sometimes describe it metaphorically this way:

12   If you just lost your arm at the elbow, and you can't stop the

13   bleeding by anything short of bench conference, by all means,

14   request one.

15        Now, I begin the trial reposing great deference and

16   trust you in you, counsel.  If you ask for a bench conference,

17   I'm likely to grant it, out of mere curiosity, if nothing else.

18   However, if we get to the bench and it's pellucid that you're

19   wasting our time with a bench conference, I will summarily

20   conclude that one, and don't bother asking for another one.

21        Now, for now, closing arguments shall be limited to

22   45 minutes total per side.  We'll revisit the sufficiency of

23   that allocation of time after the evidence has been fully

24   presented.

25        Now, going forward, if you need additional information

1    about courtroom protocol, courtroom technology, training, trial

2    preparation, transporting items, props, and artifacts into the

3    courtroom, take that up sooner rather than later with Ms.

4    Roberson, please.

5            Now, that concludes my agenda.  Are there additional

6    items that should be discussed during the trial preparation

7    conference?  Hearing first from the Government.

8            *MR. MAGNANI:*  Your Honor, there are just a few items

9    that I'd like to bring up.

10           The first is just one that we already talked about

11   with the courtroom clerk.  Is that one of your witnesses -- and

12   the defense.  One of our witnesses has Parkinson's, and his

13   ability to testify is something we might not know until the day

14   of.  He's sort of a some days are good, some days are bad.  We

15   would ask the Court -- and defense has no problem with this, of

16   course-- just to be patient with that one witness.  I'll

17   identify him to you, just so you know, Your Honor.  It's

18   Mr. Skaluba.  So with him, whether it's taking breaks or maybe

19   calling him out of order or having him step down and return, we

20   would just ask for leave from the Court.  I don't think that's

21   opposed.

22           *THE COURT:*  611(a)(1) was designed to allow the trial

23   Court to roll with the evidentiary punches, if you will.

24   Thanks for the heads-up.

25           *MR. MAGNANI:*  Okay.

1          The other thing is -- and I know you said that we can

2     get to this later -- at least in my experience in tax trials,

3     45 minutes has never been sufficient, at least for me, for

4     closing argument.  So I would anticipate asking the Court for a

5     little bit more time.  Of course, that's going to depend on how

6     the evidence goes.  But I just wanted to flag that, as well.

7          THE COURT:  It is.  I was a student of communications

8     and communications theory, both in college and throughout the

9     rest of my professional life.  I challenge you to show me a

10    credible study where the speaker is able to manage and maintain

11    the attention of his audience for more than 20 minutes.  And

12    the most recent studies -- because the television images now

13    flicker not less than every seven seconds, and given the

14    demands of social media and their brevity, good luck to you if

15    you think you can do it.

16         MR. MAGNANI:  Very well.

17         THE COURT:  But we'll revisit that again at the

18    completion of all of the evidence.

19         MR. MAGNANI:  The only other thing is that defense and

20    the Government, we've worked diligently to agree on,

21    essentially, all of our exhibits.  And we filed an exhibit

22    list, and defense is going to file theirs soon.  All of the

23    exhibits on the exhibit list are marked without objection, and

24    there are some just slight caveats to that.  One of them is

25    handled by a proposed limiting instruction.  It's Stipulated

1    Jury Instruction No. 2.  And we will ask -- and I think we're

2    in agreement with defense which exhibits that instruction will

3    be appropriate for.

4         And then the other thing is, with the defense -- there

5    are certain letters by the defendant that the defense wishes to

6    introduce into evidence.  We don't object to their admission.

7    But, of course -- and, again, defense in agreement, is my

8    understanding -- we would just ask they not be used for the

9    truth of the matter, that the defense not be able to refer to

10   those out-of-court statements by the defendant as evidence of

11   the truth of the matter of those statements.  So those are the

12   only two caveats for our filed exhibit list, where everything

13   says without objection.

14        THE COURT:  Let me entertain the response of the

15   defense to those last items.

16        MR. HARRIS:  We've discussed all of that with the

17   Government.  I think we're in substantial agreement about all

18   of that.

19        To be a little more transparent or less cryptic.  What

20   Mr. Magnani's referring to, for instance, are some exhibits

21   where Mr. Birk will have written a letter to the IRS, saying,

22   you know, this is my position on taxes; it's supported by this

23   case, case cite.  Or, I came to learn about problems with the

24   tax system after talking to, fill in the blank, name of person.

25        To the extent that those are introduced, it would not

1   be our intention to refer to any portion of them, and,

2   specifically, to not refer to the case cite or any cite

3   authority or anything that was told to or learned by Mr. Birk

4   as being independent authority for any proposition.  And,

5   thereby, it would not be our intent to be either introducing or

6   arguing from the introduction of such exhibits for the truth of

7   the matters asserted therein, other than for the truth of the

8   matter of his belief.  If that makes sense.  It's a chief

9   defense.

10          *THE COURT:*  Well, let me summarize my understanding.

11  You don't intend to offer those for the proof of the matter

12  asserted directly; you reserve the right to offer those if they

13  qualify as non-hearsay under Rule 801(d)(1)or as an exception

14  to the hearsay rule under 803(3) as to the then existing

15  physical, emotional, or mental state of the defendant, the

16  so-called state of mind exception.  Have I got it?

17          *MR. HARRIS:*  Yes.  Very well put.

18          *MR. MAGNANI:*  Actually, I would just beg to differ a

19  little bit.  I don't think that the defense can offer things

20  under 801(d)(1) if it's the defendant's own statement.  So

21  that's where this comes into play.  Whereas, the Government can

22  offer under 801(d) -- actually, I think it's (d)(2)(A) --

23          *THE COURT:*  I'm at (d)(1).  And the defendant, simply

24  because it's his statement, that's the most frequently used

25  method to offer statements by the defendant.  So I challenge

1    you to review the purview -- you're going to be admitting his

2    statements, if any, under (d)(2)(A).

3         MR. MAGNANI:  Yes.

4         THE COURT:  I'm back at (d)(1).

5         MR. MAGNANI:  And I will refresh my memory on (d)(1).

6         I think a good example, Your Honor, would be -- and I

7    think Mr. Harris agrees that he can't stand up and say,

8    Mr. Birk relied on a law professor that told him X, that told

9    him he didn't have to pay taxes.  And -- because in this

10   letter, he told the IRS, I talked to a law professor.  Of

11   course, the fact that he talked to a law professor informs

12   that; but the fact that he talked to a law professor is

13   certainly hearsay.

14        THE COURT:  All right.  As almost all evidentiary

15   objections, it awaits further clarification and context at

16   trial.

17        Anything further by the Government?

18        MR. MAGNANI:  No, Your Honor.

19        THE COURT:  Transitioning to the defense.

20        MR. HARRIS:  No, Your Honor.

21        THE COURT:  Very well.

22        Counsel, a pleasure, as always.  We'll see you to

23   commence trial by jury on Monday, July 22, 2019, with your

24   presence in the courtroom at 8 o'clock a.m., please.

25        Until then, please close the record in this matter.

1   The Court is in recess in anticipation of commencement of its

2   11 o'clock a.m. docket as soon as practicable.

3          Madam Clerk.

4          (Recess at 11:06 a.m.)

5                       REPORTER'S CERTIFICATE

6          I certify that the foregoing is a correct transcript
    from the record of proceedings in the above-entitled matter.

7

8          Dated at Denver, Colorado, this 15th day of July,
    2019.

9

10

11                       _____
                         Therese Lindblom,CSR,RMR,CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25